UNITED STATES of America,
Plaintiff–Appellee,

v.

$19,047.00 IN UNITED STATES
CURRENCY, Defendant–
in–Rem,

Parbottie Rodriguez, Claimant–Appellant.

No. 1624, Docket 95–6383.

United States Court of Appeals,
Second Circuit.

Argued May 6, 1996.

Decided Sept. 12, 1996.

William E. Betz, New York City (Stephen P. Shea, of counsel), for Claimant–Appellant.

Peter T. Gelfman, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Southern District of New York, Steven M. Haber, Assistant Unit-

ed States Attorney, of counsel), for Plaintiff–Appellee.

Before: FEINBERG, CABRANES, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

When securing a Bronx apartment as part of an investigation concerning the smuggling of aliens, an Immigration and Naturalization Service ("INS") agent found $19,047 in claimant Parbottie Rodriguez's purse. He seized this money on the grounds that it had been brought into the United States without being properly declared to the United States Customs Service. Rodriguez successfully challenged this forfeiture, arguing in part that the agent's search of her purse violated the Fourth Amendment. She now appeals from the July 7, 1995 order of the United States District Court for the Southern District of New York (Ronald L. Ellis, *Magistrate Judge*) denying her application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). Rodriguez claims that the district court's finding that the Government's search of her purse violated the Fourth Amendment entitles her to EAJA fees as a matter of law. We disagree, and affirm the decision of the district court.

## I. FACTS

### A. *The Search and Seizure*

On August 31, 1990, Rodriguez, a permanent legal resident of the United States, flew from her native Guyana to St. Croix in the U.S. Virgin Islands. Before passing through Customs in St. Croix, she completed and signed a Customs Declaration Form. Later that day, she flew from St. Croix to John F. Kennedy Airport in New York. Before landing, she signed another Customs Declaration Form. On both forms, Rodriguez declared that she was "not carrying currency or monetary instruments over $10,000, U.S. or foreign equivalent."

On September 4, 1990, INS Special Agents Richard Lauria and Michael Capasso went to an apartment in the Bronx, New York, to perform a field investigation concerning the smuggling of aliens. Upon arriving at the apartment, the agents knocked on the door several times. They were kept waiting three to four minutes, during which time the agents continued to knock on the door but were not allowed in. The agents could hear several people talking and moving around the apartment. Eventually, an individual who identified himself as Shaha Zaman Ibrahim opened the door. Lauria and Capasso indicated that they were with the INS.

Through the open door, Agent Lauria noticed the heads of several people descending a fire escape just outside the apartment. Lauria entered the apartment, climbed onto the fire escape, identified himself, and ordered the four individuals on the fire escape to return to the apartment. When asked, these individuals did not produce identification documents or green cards. However, there were three other individuals in the apartment—Ibrahim, appellant Rodriguez, and Ms. Zamecka. These individuals identified themselves as permanent residents of the United States and produced green cards as identification.

Mr. Ibrahim stated that he was the tenant, and gave Agent Lauria oral and written permission to search the apartment. Among the items found was an airline ticket issued in the name of Rodriguez. One by one, Agent Lauria questioned the four individuals he had found on the fire escape, notifying them during the interviews that they would be placed under administrative arrest for entering the United States illegally.

After he completed his interviews, Agent Lauria returned to the living room, where he found Rodriguez sitting on the floor holding a purse in her lap. Lauria asked for, and obtained, oral permission to search Rodriguez's purse.

In the purse, Lauria found Rodriguez's passport and $19,047 in United States currency. He asked Rodriguez where she obtained the money. She told him that it was "the proceeds of [import and export] business transactions" that she had recently conducted in Guyana.

Lauria then asked Rodriguez for the Customs receipt showing that she had declared the currency when she entered the United States. Rodriguez responded that she had

## 250

not declared the currency. Lauria informed Rodriguez that it was illegal to enter the United States with more than $10,000 in currency without declaring it to Customs. Approximately forty-five minutes later, Rodriguez told Lauria that she had made a mistake. She now reported that she had not brought all of the currency into the United States, but only $9,000 of it.

Based on Rodriguez's statements, Lauria seized the currency on the grounds that it was not properly declared when it was brought into the United States. Lauria then turned the money over to Customs for forfeiture.

### B. The Forfeiture Case

Claiming that a portion of the seized currency was obtained in the United States and that the amount brought into the country was less than $10,000, Rodriguez petitioned the Department of the Treasury for the return of the seized funds. The Department denied the petition. Rodriguez then filed suit in the Southern District of New York contesting the Government's forfeiture of the funds.

At the initial hearing, the Government bore the burden of establishing probable cause to believe that Rodriguez entered the United States with more than $10,000 and failed to declare it on her Customs forms. At the close of the Government's case, the district court denied plaintiff's motion for a directed verdict, holding that the claimant's possession of the money, together with her conflicting statements to Agent Lauria, sufficed to carry the Government's probable cause burden.

Once the Government had established probable cause to seize the defendant's currency, the burden shifted to Rodriguez to establish by a preponderance of the evidence that the currency was not subject to forfeiture. See, e.g., United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir. 1986). Rodriguez argued and presented evidence that, inter alia, she had not given voluntary consent to the warrantless search of her purse.

The district court agreed. Finding that Rodriguez had not voluntarily consented to the warrantless search of her purse, the district court excluded all of the evidence derived from the search. United States v. $19,047.00, No. 92 Civ. 8052(PKL)(RLE), 1994 WL 673704, at *6 (S.D.N.Y. Dec.1, 1994). Among the evidence excluded were Rodriguez's statements to Lauria concerning the origin of the seized currency. Without this evidence, the court reversed its earlier holding that the Government had probable cause to seize the currency. Id. It thus ordered the funds returned to Rodriguez.[1] Id. at *11.

### C. The EAJA Application

Several weeks later, Rodriguez filed an application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). The district court denied the request. The court found that, although the Government agents incorrectly determined that they had consent to search Rodriguez's purse, they proceeded "based on what [they] believed was sufficient probable cause." United States v. $19,047.00, No. 92 Civ. 8052(PKL)(RLE), 1995 WL 408386, at *2 (S.D.N.Y. July 11, 1995). The court denied Rodriguez's motion for reargument. United States v. $19,047.00, No. 92 Civ. 8052(PKL)(RLE), 1995 WL 575335 (S.D.N.Y. Sept. 29, 1995).

This appeal followed.

## II. DISCUSSION

### A. The Equal Access to Justice Act

■ The Equal Access to Justice Act permits parties who successfully challenge government action in the courts to recover the costs of litigation when the position of the United States was not "substantially justified" and where "special circumstances" do not render such an award "unjust." 28

---

1. The court also determined that Rodriguez should have prevailed on the merits of her claim that she had brought less than $10,000 into the U.S. Id. at *10. Presumably, it reached this issue in the event that its Fourth Amendment ruling was reversed on appeal. However, the Government did not appeal this decision, and the claimant's appeal focuses on the Fourth Amendment issue.

U.S.C. § 2412(d)(1)(A). The Supreme Court has defined "substantially justified" to mean " 'justified in substance or the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). "[T]he issue for EAJA purposes is whether the agency had a reasonable basis in fact or law to take the position that it did, at the time that it made its decision." *Sotelo–Aquije v. Slattery,* 62 F.3d 54, 58 (2d Cir.1995).

▮ This Court will reverse the district court's denial of attorney's fees only if it finds that the court abused its discretion. *Underwood,* 487 U.S. at 559, 108 S.Ct. at 2547; *Sotelo–Aquije,* 62 F.3d at 57. This standard is appropriate in part because "some of the elements that bear upon whether the Government's position 'was substantially justified' may be known only to the district court. Not infrequently, the question will turn upon not merely what was the law, but what was the evidence regarding the facts." *Underwood,* 487 U.S. at 560, 108 S.Ct. at 2547–48.

### B. *The Government's Position*

▮ Appellant advances a clever argument for the proposition that she is entitled to an EAJA fee award as a matter of law. The district court found that Lauria's search of her purse violated the Fourth Amendment's prohibition against "unreasonable" searches and seizures—as such, it found that the Government's action was not reasonable. Reasonableness is also the standard courts use to evaluate whether or not the Government's position was "substantially justified" for purposes of EAJA. *See, e.g. Commissioner, INS v. Jean,* 496 U.S. 154, 158 n. 6, 110 S.Ct. 2316, 2318–19 n. 6, 110 L.Ed.2d 134 (1990) (endorsing the "reasonable basis both in law and fact" formulation used by several circuit courts in EAJA cases). Thus, Rodriguez argues, the issue in this case—the reasonableness of the Government's position—was decided by the district court when it determined that Lauria's search had violated

the Fourth Amendment. Having found the search to be unreasonable, the court necessarily erred when it found the conduct of the Government reasonable.[2]

▮ While initially appealing, this argument incorrectly assumes that "reasonableness" for Fourth Amendment purposes is identical to "reasonableness" for EAJA purposes. Rodriguez focuses on only one aspect of the Government's position in this case—Lauria's search of her purse—without considering the reasonableness of the Government's litigation posture in defending the civil forfeiture, or the reasonableness of the custom agents' commencement of the administrative forfeiture proceedings. When it amended EAJA in 1985, Congress made it clear that the "position of the United States" includes both "the position taken by the United States in the civil action" and "the action . . . by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). However, a court should not perform separate evaluations of the Government's position at each stage of the proceedings. The Supreme Court has instructed us that "only one threshold determination for the entire civil action is to be made." *Jean,* 496 U.S. at 159, 110 S.Ct. at 2319.

When we consider the Government's position in this case in its entirety, we cannot conclude that the district court abused its discretion in finding that the Government's position in the forfeiture was substantially justified. The relevant inquiry is not solely the reasonableness of Agent Lauria's belief that he had consent to search. We must consider whether the INS's decision to pursue forfeiture proceedings—given the information available at the time it made its decision—"had a reasonable basis in fact or law." *Sotelo–Aquije,* 62 F.3d at 58; *see also United States v. One Parcel of Property,* 960 F.2d 200, 208 (1st Cir.1992) ("In a civil forfeiture proceeding, judicial inquiry into substantial justification must be tempered by the realization that the threshold for stating a prima facie case is low.").

---

**2.** Rodriguez suggests the following rule of general application: "Where the challenged governmental conduct is found on the merits to have

been unreasonable, then [the government's] position may not be held on a later EAJA application to have been substantially justified."

Of course, the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not "substantially justified." *See Marcus v. Shalala,* 17 F.3d 1033, 1036 (7th Cir.1994). It is therefore possible that the Customs agent's behavior during the search was so unreasonable as to have tainted the forfeiture proceedings in their entirety.

However, we decline to make such a finding in this case. The district court's finding of a Fourth Amendment violation was based on its conclusion that Rodriguez's consent to the search of her purse was not voluntary. Inquiries into voluntariness are by their nature fact-based, subjective, and in many cases, finely-tuned. *See Culombe v. Connecticut,* 367 U.S. 568, 604–05, 81 S.Ct. 1860, 1880–81, 6 L.Ed.2d 1037 (1961) (Frankfurter, J.) ("The notion of 'voluntariness' is itself an amphibian."); *Schneckloth v. Bustamonte,* 412 U.S. 218, 233, 93 S.Ct. 2041, 2050–51, 36 L.Ed.2d 854 (1973) ("[I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case that is evidenced in our prior decisions involving consent searches."); *see also Anderson v. Creighton,* 483 U.S. 635, 644, 107 S.Ct. 3034, 3041, 97 L.Ed.2d 523 (1987) ("We have frequently observed, and our many cases on the point amply demonstrate, the difficulty of determining whether particular searches or seizures comport with the Fourth Amendment."). The district court's factual findings in this case illustrate that the question of consent was a difficult one:

When the totality of the circumstances is evaluated in this case, the Government has failed to meet its burden to demonstrate a valid consent. First, Agent Lauria admits that he considered Guyanese to be "timid." Add to this the events leading up to the search of the purse. The agents entered the apartment very early in the morning. Agent Lauria "asked" four individuals on the fire escape to come back into the apartment.... The agents conducted a search of the apartment. They did not have a search warrant, but asked the ten-ant to sign a consent to search form.... Agent Lauria took each of the individuals from the fire escape into a separate room [to conduct an interview].... Agent Lauria placed three individuals in the apartment under "administrative arrest." ... During all of these actions, the claimant was sitting quietly in the living room, witnessing [all this]. Agent Lauria then turned his attention to the claimant, knelt down "a few feet away from her to be at eye level," and asked to look into her purse.... At this point, after all that had happened in the apartment, [the search] had been tainted by the continual display of governmental authority over the apartment and its occupants. Any consent was the result of this coercive show of police authority.

1994 WL 673704, at *6 (transcript citations and footnotes omitted).

After determining that a search failed to meet the standards of the Fourth Amendment, a district court could still conclude that the Government agency's position was substantially justified by considering the closeness of the Fourth Amendment question, the particular circumstances of the case, or the reasonableness of the Government agent's belief that the search was proper. In other words, a court could determine that a search was unreasonable for Fourth Amendment purposes but that for EAJA purposes the agency had a reasonable basis in fact and law for concluding otherwise. *See Welter v. Sullivan,* 941 F.2d 674, 676 (8th Cir.1991) (rejecting plaintiff's claim because "at least one permissible view of the evidence" showed a reasonable basis, and noting that "[c]loseness [of a legal issue] itself is evidence of substantial justification"); *Pullen v. Bowen,* 820 F.2d 105, 109 (4th Cir.1987) (noting Government's position substantially justified where "case was not an easy one [and] required Government attorneys and an administrative law judge to make difficult judgments on the evidence."). Given the closeness of the Fourth Amendment determination in this case, the agency had a reasonable basis to conclude that Lauria had obtained legal consent to search. Its decision to pursue forfeiture was therefore not unreasonable.

Appellant's reliance on *FEC v. Political Contributions Data, Inc.,* 995 F.2d 383 (2d

Cir.1993), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1064, 127 L.Ed.2d 384 (1994) is misplaced. In that case, the court held that an earlier panel's determination that the FEC's position was unreasonable mandated an award of fees under EAJA. The FEC's reading of a statute, on which the underlying litigation was based, had flatly contradicted the statute's plain language and legislative history. *Id.* at 386–87. This court had already held that the FEC's position was altogether unreasonable. In the case at bar, we do not have a prior panel decision. More importantly, there is more room for dispute over the fact-based inquiry into consent that was conducted in this case than over the interpretation of the clear and unequivocal language of the statute at issue in *Political Contributions.* Thus, *Political Contributions* is not controlling.

After reviewing the evidence and hearing the testimony in this case, the district court was in the best position to determine that the Government's position was substantially justified. Its decision to deny claimant fees under EAJA does not represent an abuse of discretion.

The decision of the district court is affirmed.