06-0525-cv
Healey v. Rovner

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2006

(Argued: January 26, 2007                    Decided: April 17, 2007)

Docket Nos. 06-0525-cv (L); 06-0529-cv (XAP)
————————

RUTH HEALEY, MARCIA LUTWIN, JANE KOZLOWSKI, MARGARET A. WALZ, ROGER AUDETTE, MARION MORGAN, BY HER NEXT FRIEND DOROTHY M. HILTZ, JULIA M. CULVER, BY HER NEXT FRIEND REV. HORACE MITCHELL, BERTHA P. CHIPLIN, BY HER NEXT FRIEND ALFRED J. CHIPLIN, SR., LINDA WIERDA,

*Plaintiffs-Appellees-Cross-Appellants*,

MADALYN ROVNER, ROLAND COTE, FLORENTINA CALDERON, BY HER NEXT FRIEND EVA MORENO, HELEN BAGWELL, MAXINE MARMOR, DEBORAH SERGESKETTER, KATHERINE WATTS,

*Intervenors-Plaintiffs*,

—*v.*—

MICHAEL O. LEAVITT, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

*Defendant-Appellant-Cross-Appellee*,

NATIONAL ASSOCIATION FOR HOME CARE, INC.,

*Movant.*
————————

B e f o r e: KATZMANN, HALL, *Circuit Judges*, AND TRAGER, *District Judge.*[*]

———————————

[*] The Honorable David G. Trager, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

––––––––––––––––

Appeal from a decision of the United States District Court for the District of Connecticut (Squatrito, *J.*) awarding the plaintiffs-appellees' attorneys fees under the Equal Access to Justice Act. We affirm the district court's decision to award fees and to reduce the fee amount to reflect the plaintiffs' overall success in the litigation, but we reverse its decision to award fees at a rate above the statutory cap. Accordingly, the decision of the district court is **AFFIRMED** in part and **REVERSED** in part.

––––––––––––––––

APPEARING FOR PLAINTIFFS-APPELLEES-CROSS-APPELLANTS:

GILL DEFORD (Judith Stein, Brad Plebani, Pamela A. Meliso, Willimantic, CT; Alfred J. Chiplin, Jr., Vicki Gottlich, Washington, DC; Sally Hart, Tuscon, AZ; Diane Paulson, Boston, MA; Edward C. King, Washington, DC; Sarah Lock, Washington, DC; Lenore Gerard, San Francisco, CA *on the brief*)

APPEARING FOR DEFENDANT-APPELLANT-CROSS-APPELLEE:

JEFFREY CLAIR (Barbara C. Biddle *on the brief*), *for* Kevin J. O'Connor, United States Attorney for the District of Connecticut, and Peter D. Keisler, Assistant Attorney General, Department of Justice, Washington, DC

Lawrence S. Lustberg, Megan Lewis, Newark, NJ for Amicus Curiae The Brennan Center for Justice.

––––––––––––––––

KATZMANN, *Circuit Judge*:

This case arises out of a class action suit filed on behalf of home-bound Medicare beneficiaries who rely on Medicare coverage for various in-home services provided by home health agencies ("HHAs"). The merits of the plaintiffs' action have already been resolved, and we are called upon to determine whether the plaintiffs are entitled to attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), and, if so, the scope of that award. We

hold that the district court did not abuse its discretion in awarding the plaintiffs attorneys' fees or in reducing the amount of those fees to reflect their overall success in the litigation. It did, however, abuse its discretion in awarding the plaintiffs fees at an hourly rate above the EAJA statutory cap. The decision of the district court is affirmed in part and reversed in part.

## I.

In 1998, the plaintiffs, a class of elderly and disabled Medicare beneficiaries who faced the reduction or termination of home health care services provided by HHAs, sued the Department of Health and Human Services ("HHS"). The plaintiffs sought declaratory and injunctive relief that would require HHS to compel HHAs to provide greater procedural protections before reducing or terminating home health services provided to Medicare beneficiaries. Because the facts and procedural posture of this case have already been set out in some detail, *see Lutwin v. Thompson*, 361 F.3d 146 (2d Cir. 2004); *Healey v. Thompson*, 186 F. Supp. 2d 105 (D. Conn. 2001) ("*Healey II*"); *Healey v. Shalala*, No. 98 Civ. 418 (DJS), 2000 WL 303439 (D. Conn. Feb. 11, 2000) ("*Healey I*"), we set forth below only such facts as are necessary to resolve this appeal.

When the plaintiffs first brought suit, Medicare beneficiaries confronted with an adverse coverage determination by an HHA could obtain review of that decision only if they satisfied two conditions. First, they had to request that the HHA submit a claim to the Health Care Financing Administration (the "HCFA"), the agency within HHS that then administered Medicare, for those services or items that the HHA believed were not covered. This was commonly known as a

"demand bill." *Lutwin*, 361 F.3d at 149. Second, they had to agree to pay the HHA for the care provided if the HCFA affirmed the adverse coverage determination. *Id.* To complicate matters further, there was no procedure in place for providing pre-deprivation notice to beneficiaries that their coverage had been reduced or terminated. Accordingly, many beneficiaries may not have even been aware of the "demand bill" review process. Relying on the Medicare statute, 42 U.S.C. § 1395bbb, the plaintiffs challenged this scheme for failing to provide them with: (1) advance written notification of the reduction or termination of coverage; (2) specific reasons for the reduction or termination; and (3) an explanation of the "demand bill" process. They also argued that they were entitled to pre-deprivation review under the Due Process Clause. The magistrate judge and district court agreed with the plaintiffs with respect to their challenges under the Medicare statute and found it unnecessary to reach the plaintiffs' constitutional claim. The district court adopted the magistrate judge's recommendation that it enter a declaratory judgment, establishing that, *inter alia*, "plaintiffs have a legal right to a written: (1) pre-deprivation statement why the HHA believes Medicare may not . . . cover their services . . . (2) explanation of the circumstances in which a beneficiary has the right to have a demand bill submitted, and (3) disclosure of information regarding a patient's right to appeal." *Healey I*, 2000 WL 303439, at *1 (internal quotation marks omitted), *adopted by Healey v. Shalala*, No. 98 Civ 418 (DJS), 2000 WL 436618 (D. Conn. March 1, 2000).

Four months after the district court's decision, HCFA implemented a new system which, *inter alia*, required HHAs to provide mandatory notice to Medicare beneficiaries when making adverse coverage decisions. HCFA made clear, however, that it believed such notice was required only when the HHA determined that the treatment was not within the scope of

-4-

Medicare's coverage. Thus, under its view, notice was not required when a beneficiary's treating physician ordered that the home health care be reduced or terminated. *Lutwin*, 361 F.3d at 150-52. Following these changes, the plaintiffs renewed their challenges to the notice procedures, arguing that the Medicare statute required that Medicare beneficiaries receive notice when an HHA terminates coverage for any reason, not just because it has determined that Medicare no longer covers the treatment, and that the Due Process Clause requires pre-deprivation review of an HHA's adverse coverage determination. *Id.* at 152. This time, the magistrate judge rejected the plaintiffs' claims, *Healey II*, 186 F. Supp. 2d at 121-22, and the district court adopted his recommendation that plaintiffs were entitled to neither of these forms of additional relief, *see id.* at 107.

On appeal, a divided panel of this Court held that the Medicare statute unambiguously requires that the HHAs give written notice before they reduce or terminate home health services for any reason, including for lack of physician certification. *Lutwin*, 361 F.3d at 156; *id.* at 158 (Winter, J., dissenting). The panel affirmed, however, the district court's conclusion that pre-deprivation review was not required under either the statute or the Constitution. *Id.* at 158.

The plaintiffs then sought attorneys' fees under the EAJA. The district court determined that the Government's position was not "substantially justified" and awarded fees. *Healey v. Leavitt*, No. 98 Civ. 418 (DJS), 2005 WL 2850163, at *3 (D. Conn. Oct. 26, 2005) ("*Healey III*"). It further held that the "specialized expertise" of the plaintiffs' counsel entitled them to an enhanced rate of compensation under the statute, *id.* at *4, but that a reduction in the amount of the fee was appropriate to reflect the plaintiffs' lack of success on their claims that they were entitled to pre-deprivation hearings, *id.* at *5. The Government appealed the district court's

holdings that a fee award was appropriate and that the plaintiffs' counsel were entitled to an enhanced rate of compensation. The plaintiffs, in turn, appealed the district court's reduction in the overall amount of the award.

II

The EAJA provides, in pertinent part, that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Government bears the burden of showing that its position was "substantially justified," and to meet that burden, it must make a "strong showing" that its action was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Env'l Def. Fund, Inc. v. Watt*, 722 F.2d 1081, 1085 (2d Cir. 1983) (internal quotation marks omitted); *see also Pierce*, 487 U.S. at 565 (noting that the Government's position must have a "reasonable basis both in law and fact"). The Government's position includes both "the position taken by the United States in the civil action[] [and] the action or failure to act by the agency upon which the civil action is based," 28 U.S.C. § 2412(d)(2)(D); *see also Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 159 (1990); *Sotelo-Aquije v. Slattery*, 62 F.3d 54, 57 (2d Cir. 1995), and it is well-established that "the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not 'substantially justified,'" *United States v. $19,047.00 in U.S. Currency*, 95 F.3d 248,

252 (2d Cir. 1996); *see also Watt*, 722 F.2d at 1086 ("The government may lack substantial justification for its position even though it does not insist upon an unreasonable stance through to the resolution of a case."). We review the district court's determination that the Government's position was not substantially justified for abuse of discretion. *See, e.g.*, *Pierce*, 487 U.S. at 553.

Here, the district court held that the Government's pre-litigation position was not substantially justified because "the Secretary's failure to provide written notice to plaintiffs and those in their position of the termination of crucial health care services, and the Secretary's subsequent defense of his inaction, were unreasonable." *Healey III*, 2005 WL 2850163, at *3. The Government, which bears the burden of establishing that its position was "substantially justified," *Watt*, 722 F.2d at 1085, has failed to offer any justification for the Secretary's failure to require the HHAs to provide written notice of the termination of benefits prior to the onset of this litigation.[1] Although the Government points out that Medicare manual provisions then in effect required HHAs "to submit a claim for disputed services on the demand of a beneficiary," the relevant manual provisions nowhere required the HHA to notify patients that they could make such a demand. Moreover, the provisions did not require the HHA to notify patients of "the reasons for [its adverse coverage] determination, . . . the procedures for obtaining additional information concerning the redetermination, . . . [and] the right to seek a determination or otherwise appeal the determination and instructions on how to initiate such a redetermination under this section," as was clearly required by the statute. 42 U.S.C. § 1395ff(4)(A). As the

---

[1] In the early stages of this litigation, the Government appears to have argued that it was not responsible for the HHAs' failure to provide notice because they were not "state actors," *see Healey I*, 2000 WL 303439, at *8, but on appeal, it does not explain why that position was "substantially justified."

district court explained, "[a]lthough there was some legitimate dispute regarding the precise contours of the Secretary's obligation, . . . this dispute did not justify the Secretary's declining to provide notice in circumstances not subject to dispute." *Healey III*, 2005 WL 2850163, at *3.

The Government argues that a fee award is nonetheless inappropriate in this case because it quickly improved its policies in response to the initiation of this litigation. However, even assuming, *arguendo*, that the Government did act quickly to improve its policies,[2] its prelitigation conduct was sufficiently "unreasonable [that it] render[s] the entire Government position not 'substantially justified.'" *$19,047.00 in U.S. Currency*, 95 F.3d at 252. To deny the plaintiffs fees on the basis that the Government responded quickly would undermine the EAJA's fundamental objective to encourage individuals to challenge governmental policies that are not "substantially justified." *See* H.R. Rep. 96-1418, at 9, *as reprinted in* 1980 U.S.C.C.A.N. 4984, 4988 (Sept. 26, 1980) ("For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. . . . In these cases, it is more practical to endure an injustice than to contest it."). As we explained in *Smith v. Bowen*, 867 F.2d 731 (2d Cir. 1989), if the Government's prelitigation position could not render the entire Government position "not substantially justified," then "a person who considers challenging an agency decision would face the prospect of not receiving compensation for his advocacy in potentially protracted litigation in federal court," and such a result would "discourage an aggrieved party from seeking full 'vindication of his rights' under the EAJA." *Id.*

---

[2] The plaintiffs dispute that the Government acted quickly to enact the necessary changes. Because we hold that the Government's position was not "substantially justified" even if it did act expeditiously to enact the promised changes, we need not resolve this dispute.

at 734.[3]

Accordingly, we affirm the district court's decision to award the plaintiffs fees under the EAJA.

III

The EAJA provides that the "fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). In *Pierce v. Underwood*, the Supreme Court explained that

> the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.

487 U.S. at 572. The Court identified "an identifiable practice specialty such as patent law, [and]

---

[3] The Government also argues that the district court abused its discretion in failing to consider its success on plaintiffs' claim for pre-deprivation review, but the district court here recognized that the Government had achieved partial success in the litigation, *Healey III*, 2005 WL 2850163, at *2, and nonetheless determined that the Government's "prelitigation conduct . . . [was] sufficiently unreasonable by itself to render the entire Government position not 'substantially justified,'" *$19,047.00 in United States Currency*, 95 F.3d at 252.

knowledge of foreign law or language" as examples of the "distinctive knowledge" that would justify an enhanced award under the statute. *Id.*; *see also Wells v. Bowen*, 855 F.2d 37, 42 (2d Cir. 1988) ("The Supreme Court has recently held that the latter clause, allowing an increase for certain 'specialized factor[s],' must be interpreted narrowly . . . .").

The attorneys here, while undisputably experienced in the practice of Medicare law, do not possess "*distinctive* knowledge or *specialized* skill *needful* for the litigation in question." *Pierce*, 487 U.S. at 572 (emphasis added). In *Pierce*, the Supreme Court made clear that attorneys should be awarded fees above the statutory cap only if they are "'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." *Id.* The district court here awarded plaintiffs' counsel an enhanced fee because, in part, they had "'dealt with difficult procedural issues such as identifying and certifying a plaintiff class of Medicare beneficiaries, coordinating a lengthy discovery effort, and preparing dispositive motions based on findings culled from the discovery process.'" *Healey III*, 2005 WL 2850163, at *4 (quoting *Conn. State Dep't of Soc. Servs. v. Thompson*, 289 F. Supp. 2d 198, 205 (D. Conn. 2003)). However, most litigation requires attorneys to engage in discovery and prepare dispositive motions, and conducting these tasks does not require any knowledge or skill unique to a particular group of litigators. While the scope or complexity of some cases may make these tasks more demanding, even an "extraordinary level" of skill in these routine tasks of litigation does not justify a higher fee award under the EAJA. *Pierce*, 487 U.S. at 572; *see also Dubose v. Pierce*, 857 F.2d 889, 893 (2d Cir. 1988) (per curiam) (holding that the district court did not abuse its discretion in declining to enhance an EAJA fee award to reflect "the skill of the attorneys"). Moreover, to the extent that these tasks are particularly time-consuming or

demanding in a particular case, that fact would be captured in the number of hours expended on the litigation, and the plaintiffs' counsel would be compensated accordingly in any fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").  Likewise, class action procedure, while it can certainly be challenging, does not require specialized skill or knowledge that cannot be acquired by any competent litigator.  Indeed, at oral argument, plaintiffs' counsel conceded that the fact that this is a class action would not in and of itself be sufficient to justify enhanced compensation under the EAJA.

Instead, plaintiffs argue that the enhanced fee is appropriate in this case because this is a "complex class action" involving a complicated administrative statute, and counsels' skill and experience in these areas "rendered them particularly appropriate for [this] litigation."  The district court here adopted that view, holding that "extensive knowledge of the [Medicare] statut[e] and regulat[ions]" is analogous to the skills "developed by a patent lawyer: expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of the needs of a particular class of clients."  *Healey III*, 2005 WL 2850163, at *4 (quoting *Conn. State Dep't of Soc. Servs. v. Thompson*, 289 F. Supp. 2d 198, 205 (D. Conn. 2003)).

While we need not determine today whether there may ever be a case in which these factors would justify an enhanced fee award under the EAJA, there is nothing in this case that

-11-

requires "specialized expertise" of the type that would make an enhanced fee appropriate.[4]  To the contrary, a case requires "specialized expertise" within the meaning of the EAJA only when it requires some knowledge or skill that cannot be obtained by a competent practicing attorney through routine research or legal experience.  This case, although certainly challenging, is typical of most litigation brought under modern administrative statutes.  While one cannot deny the complexity of the Medicare statute and the regulations promulgated thereunder, this regulatory scheme is no more complex than countless other federal regulatory schemes, and attaining proficiency in these areas is "not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice."  *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990); *see also Hyatt v. Barnhart*, 315 F.3d 239, 252 (4th Cir. 2002) ("[E]xpertise in social security law would be of the type that is possessed or easily acquired by reasonably competent attorneys licensed to practice law."); *In re Sealed Case 00-5116*, 254 F.3d 233, 235 (D.C. Cir. 2001) ("[L]awyers practicing administrative law typically develop expertise in a particular regulated industry, but this expertise comes from experience, not from specialized training.") (internal quotation marks omitted); *Atl. Fish Spotters Ass'n v. Daley*,

---

[4] The plaintiffs argue that this case is unique because the involvement of a "passive and largely hidden client population" means that only advocates "closely attuned to the needs and problems of the client population" could bring this litigation.  However, this litigation did not require attorneys with specialized knowledge and skill to identify the legal problem faced by the homebound Medicare beneficiaries.  While the contacts and experience of counsel here may have helped them to organize this litigation on a national level, those contacts could have been obtained by any attorney.  *See Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 492 (1st Cir. 2000) (noting that "the question is not whether counsel's experience in [the area of] law is helpful or productive but whether it is essential for competent representation").  Indeed, in *Pierce*, the fact that counsel organized a "nationwide class of tenants residing in Government-subsidized housing" did not entitle them to an enhanced award under the statute.  *See Pierce*, 487 U.S. at 555, 572.

205 F.3d 488, 492 (1st Cir. 2000) ("It is almost always helpful for counsel to have had prior experience in the [relevant area of law], usually the more the better. But in most cases an otherwise competent lawyer can—albeit at the cost of some extra time—learn enough about the particular controversy to litigate in the area adequately . . . .").[5]

The plaintiffs argue that the enhanced award was appropriate here because this case involved the combination of both the Medicare statute and class action procedure, a contention that is difficult to sustain given that neither alone constitutes a "specialized expertise" within the meaning of the statute. *See Hyatt*, 315 F.3d at 252 ("[W]e are persuaded that combining expertise in these two practice specialties—class action litigation and social security disability law—does not then become an expertise beyond that which can be acquired by the diligent study of these not uncommon areas of American law."); *cf. Pierce*, 487 U.S. at 555, 574 (denying an enhanced fee award in a class action brought under the Housing and Community Development Act of 1974). We need not determine whether there might ever be a circumstance in which such a combination could justify an enhanced EAJA award, but we see no reason why, at least under the facts of this case, one would be justified here. Indeed, if we were to award an enhanced fee in this case simply because it is a class action brought under a complex statutory scheme, we might

_____

[5] It might take attorneys without the experience of those here time to familiarize themselves with the Medicare statute and the issues involved in this case, but again this time may be compensated should they be successful in litigating the case and therefore should not operate as a disincentive for a less experienced attorney to take on a potentially meritorious case. *Cf., e.g.*, *Mar Oil, S.A. v. Morrisey*, 982 F.2d 830, 841 (2d Cir. 1993) (noting that "[a] variety of factors inform the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved" (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987))).

risk making enhanced compensation under the EAJA the rule rather than the exception it was meant to be. *See Pierce*, 487 U.S. at 573 (explaining that "to preserve the intended effectiveness of the . . . cap, . . . the other 'special factors' envisioned by the exception must be such as are not of broad and general application"); *see also Atl. Fish Spotters Ass'n*, 205 F.3d at 491 (noting that enhanced compensation is an "exception[]" to the general rule that the EAJA provides only "modest compensation").[6]

Accordingly, we hold that the district court erred in awarding the plaintiffs an enhanced fee under the EAJA and we reverse that portion of the district court's opinion.

IV

The final issue on appeal is whether the district court abused its discretion when it reduced the plaintiffs' fee award on the ground that one of their claims was "legally distinct" and therefore not compensable. In determining a fee award, the typical starting point is the so-called lodestar amount, that is "the number of hours reasonably expended on the litigation multiplied by

---

[6] Even if, as the plaintiffs argue, the intersection of these two issues may make it more difficult to find attorneys willing to take on cases of this kind, that does not make an enhanced fee award appropriate under the EAJA. As the Supreme Court explained in *Pierce*, "[i]f 'the limited availability of qualified attorneys for the proceedings involved' meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the . . . cap—since the 'prevailing market rates for the kind and quality of the services furnished' are obviously *determined* by the relative supply of that kind and quality of services." 487 U.S. at 572. Thus, as noted above, the Court explained that "the exception for 'limited availability of qualified attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence. . . . Where such qualifications are necessary and can be obtained only at rates in excess of the . . . cap, reimbursement above that limit is allowed." *Id.*

a reasonable hourly rate." *Hensley*, 461 U.S. at 433. However, the

> product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.

*Id.* at 434 (footnote omitted). Again, we review the district court's decision for abuse of discretion. *See Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam).

Here, the district court reduced the plaintiffs' fee to "acknowledge the fact that plaintiffs spent a great deal of time pursuing a distinct and unsuccessful claim. Although the [notice claim and the claim for pre-deprivation hearings] shared a common background and, in part, were based upon the Fifth Amendment, the claims are legally distinct. . . . [T]he court was required to independently analyze whether the Fifth Amendment required both notice and a pre-deprivation hearing." *Healey III*, 2005 WL 2850163, at *5. The plaintiffs argue that the reduction in fees was not appropriate here because their claims all derive from the procedures HHS employed when making determinations about the availability of home health care, and a reduction in fees is appropriate only when the claims are "distinct *in all respects*." However, while we have held that a fee *should* be reduced when the "plaintiff has failed to prevail on a claim that is distinct in all respects" from his successful claims, *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) (internal quotation marks and emphasis omitted), we have never held that it can be reduced *only* in that situation. To the contrary, it is well-established that "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount, . . . even where the plaintiff's claims were interrelated, nonfrivolous, and

-15-

raised in good faith." *Hensley*, 461 U.S. at 436; *see also Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005) ("[A] district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted . . . to cases of multiple discrete theories . . . ."); *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (per curiam).

In determining whether a fee reduction is appropriate, "the most critical factor is the degree of success obtained," and courts should consider whether the plaintiffs "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 436, 434. Here, given the considerable amount of time plaintiffs devoted to their unsuccessful claim that they were entitled to pre-deprivation hearings, we hold that there was no abuse of discretion in the district court's decision to reduce the plaintiffs' fee to reflect their limited success in the litigation as a whole. *See, e.g.*, *Kassim*, 415 F.3d at 255 ("[B]ecause the plaintiffs had failed to win an injunction on terms more favorable to them, they had achieved only partial or limited success. . . . Because the plaintiffs' degree of success is the most critical factor, we authorized the district court to reduce the requested award to account for the limited success." (internal citations and quotation marks omitted)).[7]

Accordingly, we affirm the district court's decision to reduce the amount of the plaintiffs'

---

[7] The plaintiffs argue that they were "fully successful on their 'centerpiece claim'" and "should not be faulted and punished for seeking additional and reasonable procedural protections," but it is no punishment to deny them fees for this claim on which they were not successful. As the Supreme Court noted in *Hensley*, "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained." 461 U.S. at 436.

-16-

fee award to reflect their overall success in the litigation.

IV

For the foregoing reasons, we affirm in part and reverse in part. We remand for the calculation of reasonable fees and costs consistent with this opinion.