Amira Qadir BARWARI, Petitioner,

v.

Michael B. MUKASEY, Attorney General of the United States, Respondent.

No. 06–3238–ag.

United States Court of Appeals, Second Circuit.

June 30, 2008.

H. Raymond Fasano, Madeo & Fasano, New York, NY, for Petitioner.

George E.B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Eastern District of North Carolina, Raleigh, NC, for Respondent.

PRESENT: Hon. RICHARD J. CARDAMONE, Hon. CHESTER J. STRAUB and Hon. B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

Amira Qadir Barwari moves to recover from the government $10,280.25 in attorney fees and other expenses associated with her successful petition for review of a June 20, 2006 decision of the Board of Immigration Appeals (BIA) upholding the denial of her claims for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We overturned this BIA decision on December 26, 2007, holding that the agency misapplied the law and used flawed reasoning to deny Barwari's claims. *Barwari v. Mukasey,* 258 Fed.Appx. 383 (2d Cir.2007).

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A), provides for the recovery of litigation costs by the "prevailing party . . . in any civil action . . ., including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *See Vacchio v. Ashcroft,* 404 F.3d 663, 667 (2d Cir.2005); *Sotelo–Aquije v. Slattery,* 62 F.3d 54, 57 (2d Cir. 1995). The government does not contest that this provision applies to Barwari's petition for review or that she was the prevailing party. In deciding these issues in Barwari's favor, therefore, we take no position on the application of § 2412(d)(1)(A) beyond the confines of this case. The government argues, however, that its position was "substantially justified" within the meaning of the EAJA.

The "substantially justified" standard places the burden on the government to "make a 'strong showing' that its action was 'justified to a degree that could satisfy a reasonable person.'" *Healey v. Leavitt,* 485 F.3d 63, 67 (2d Cir.2007). "The Government's position includes both the position taken by the United States in the civil action and the action or failure to act by the agency upon which the civil action is based." *Id.* The government must demonstrate this position had a "reasonable basis both in law and fact." *Vacchio,* 404 F.3d at 674; *Sotelo–Aquije,* 62 F.3d at 57. Here, it has demonstrated neither.

First, the immigration judge in this case denied Barwari's CAT claim on the ground that any harm she might experience in Iraq would not constitute torture

because it would be inflicted by entities beyond the control of the Iraqi government. That interpretation of the law was unreasonable in light of this Court's controlling precedent. In *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir.2004), we held that torture may occur whenever "government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it." We specifically rejected the Attorney General's position that torture requires government "consent or approval." *Id.* at 170–71 (disapproving of *Matter of Y–L–, A–G–, R–S–R–*, 23 I. & N. Dec. 270 (2002)). Although we did not directly address the related issue of a government's ability to "control" the entities carrying out torture, our reasoning leads to the logical conclusion that such control is not always necessary. *See Delgado v. Mukasey*, 508 F.3d 702, 708–09 (2d Cir.2007) (remanding for the agency to consider a CAT claim based on the risk of harm inflicted by Colombian rebels). At the very least, the immigration judge needed to consider the *Khouzam* holding and analyze its effect on Barwari's claim. Instead, he failed to mention *Khouzam* at all.

Second, even leaving aside the immigration judge's legal analysis, his factual findings were also flawed. He pointed to changed country conditions in Iraq following the U.S.–led invasion, but failed to analyze in any depth how these changes would affect Barwari's particular situation. He did not consider, for instance, the risk of harm due to Barwari's strong connections to the United States or her husband's work for a U.S. government contractor. Instead, the immigration judge simply assumed, without analysis, that the only risk of harm facing Barwari comes from anti–U.S. insurgents with no ties to the Iraqi government. As we held in our decision of December 26, 2007, the immigration judge's lack of reasoning frustrated any attempt at meaningful judicial review. *Barwari,* 258 Fed.Appx. at 385.

The immigration judge's errors, of course, might have been pointed out by the Department of Homeland Security (DHS) when Barwari challenged her removal order before the BIA; instead, the DHS defended the order with the conclusory argument that "country conditions in Iraq have materially changed." Regardless of the DHS's position, the BIA might still have corrected the immigration judge's decision; instead, it adopted this decision without even mentioning *Khouzam*—which had been controlling law for over two years at that point. As a result, the agency ended up issuing a final order for Barwari's expulsion to Iraq based on a flimsy analysis of both the law and the facts. Because this action was not justified to a degree that could satisfy a reasonable person, it was not "substantially justified" within the meaning of the EAJA and Barwari is entitled to fees. *See Healey,* 485 F.3d at 67.

█ We cannot, however, award the full amount .of $10,280.25 requested by Barwari's attorney. This amount is calculated in the motion based on 33.55 hours of the attorney's time at $275 per hour, 6.5 hours of a paralegal's time at $93 per hour, and the $450 filing fee paid to this Court. While we agree with the latter two items in the calculation (paralegal and filing fees), we do not believe an award of attorney fees at $275 per hour is justified.

The EAJA allows for "reasonable attorney fees," which are to be "based upon prevailing market rates for the kind and quality of the services furnished," but may not exceed "$125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher

fee." 28 U.S.C. § 2412(d)(2)(A); *see Healey*, 485 F.3d at 68. We agree with Barwari's attorney that a fee adjustment is warranted based on the increase in cost of living between March 1996 (when the statutory cap of $125 per hour was set) and February 2007 (when Barwari retained her attorney's services for this petition). We estimate this increase, based on the Consumer Price Index, *see Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir.1992), to be 133 per cent for the urban areas of the Northeastern United States. We therefore adjust the maximum attorney fees to $166.25 per hour.

Any award above this maximum must be justified by a "special factor, such as the limited availability of qualified attorneys for the proceedings involved," 28 U.S.C. § 2412(d)(2)(A), and we are unpersuaded that such a factor exists in this case. While certain immigration cases may well require the type of distinctive knowledge or specialized expertise that warrants a fee enhancement, this was not one of them. *Cf. Healey*, 485 F.3d at 68–70 (rejecting fee enhancement for Medicare case that did not require knowledge or skills beyond the ordinary). Indeed, contrary to the arguments advanced by Barwari's counsel, we find the issues in this petition for review relatively straightforward and the agency's error obvious.

Nor are we moved by Barwari's counsel's affidavit as to the fees being charged by other immigration attorneys. In that affidavit counsel states he discussed Barwari's case with "other immigration attorneys" and was "unable to find any attorney ... who was willing to be co-counsel for a fee of less than $300 per hour." He also states, "[t]here are few, if any, attorneys who will undertake involved or complex immigration litigation ... for less than $300 per hour," an assertion apparently based on his "conversations with other at-torneys with similar practices, cases [he has] taken over from other attorneys, and [his] review of surveys of hourly billing rates by attorneys in the field." There is no indication of the number of attorneys sampled, or any hard data from the surveys reviewed. Moreover, counsel's argument for a market rate above $166.25 per hour is belied by the $5,000 flat rate fee he actually charged Barwari in this case. When reduced by the paralegal and filing fees (both of which were included in the flat rate), counsel's fee comes out to $151.46 for each hour he actually spent on this petition (not counting the 7.5 hours he reports having spent on the EAJA motion).

In this case, we think the cost-of-living-adjusted maximum of $166.25 represents a "reasonable" fee. Although it leads to an award slightly above the flat rate actually negotiated by Barwari, we recognize that the flat rate itself may be based on an estimate of the amount of time required by the case, and counsel asserts that his estimate was low here. Multiplying our adjusted rate by the number of hours counsel reports having actually spent on the petition for review as well as the EAJA motion, we come to $5,577.69 in attorney fees. Combined with the $604.50 in paralegal fees and the $450 filing fee, we reach a total award of $6,632.19.

■ One final issue we confront has to do with the beneficiary of this award. The motion includes a document purporting to memorialize Barwari's assignment to her counsel of any EAJA award granted. The document, however, is unsigned. The motion also includes an affidavit in which counsel states, "I have executed a retainer agreement with my client which provides that all of the fees in this case and the costs recoverable are assigned by him [sic] directly to me." The retainer agreement submitted with the motion, however, says

nothing of any assignment of fees. Moreover, it is unclear to us why Barwari would assign the entire EAJA award to her counsel if she has already paid him according to the terms of the retainer agreement. (Counsel states Barwari has been unable to pay "most" of the fees in this case, but he does not specify how much she has paid.) The purpose of the EAJA award, after all, is not to further enrich counsel beyond what he has received from his client, but instead to reimburse the client for her expenses and compensate counsel for any additional labor or costs that have not yet been paid for. We therefore hold that while the EAJA award is to be paid directly to Barwari's counsel, upon receiving this award Barwari's counsel must refund Barwari any and all fees that she has already paid to him in connection with this matter. We direct Barwari's counsel to file, within 30 days of the date of this order, an affidavit indicating the sum that this refund will amount to and indicating that he has discussed the award and the refund with Barwari herself. This affidavit is to be accompanied by an affidavit by Barwari indicating her full understanding of this arrangement.

For the foregoing reasons, we GRANT Barwari's motion in part, and we award EAJA fees in the amount of $6,632.19. We DENY Barwari's motion to the extent that she seeks fees beyond this amount. We direct Barwari's counsel to file the documents discussed above within 30 days of the date of this order.