ELIZABETH A. WOLFORD, United States District Judge
BACKGROUND
Plaintiff Jolly Manoj Caplash ("Plaintiff") commenced this litigation on December 29, 2015, and requested that this Court set aside the denial and subsequent refusals to reopen Plaintiff's Form I-130 family-based immigration petition (the "Petition") filed on behalf of his brother with the United States Citizenship and Immigration Service (the "USCIS"). (Dkt. I).[2] Plaintiff brought this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 - 559, 701 - 706, against the Secretary of the Department of Homeland Security, the Director of the USCIS, the Director of the USCIS Nebraska Service Center, and the Attorney General of the United States (collectively, "the Government"). (Id. at ¶¶ 1, 6-9). On March 7, 2016, the Government answered the Complaint. (Dkt. 7). On June 9, 2016, Plaintiff moved for summary judgment. (Dkt. 18). On July 7, 2016, the Government *128 moved for summary judgment (Dkt. 21), and Plaintiff and the Government each responded on July 21, 2016, and July 28, 2016, respectively (Dkt. 22; Dkt. 23). On January 18, 2017, the Court denied the Government's motion, and granted Plaintiff's motion on due process grounds, but otherwise declined to find the USCIS's review of Plaintiff's administrative filings arbitrary and capricious. (Dkt. 29). The Court set aside the USCIS's denial of Plaintiff's Form I-130 petition and remanded the action to the agency, requiring, among other things, that the USCIS re-adjudicate the Petition. (See id. at 31).
On April 10, 2017, Plaintiff filed an application pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), seeking an award of attorney's fees. (Dkt. 31). The Government opposes the motion. (Dkt. 33). Oral argument was held before the undersigned on June 12, 2017, at which time the Court reserved decision, and directed the parties to file supplemental papers addressing Plaintiff's request for a supplemental fee award for the hours accrued in litigating the initial EAJA application. (Dkt. 36; Dkt. 37; Dkt. 39 at 34-36). On July 7, 2017, Plaintiff filed a declaration in support of his supplemental fee application (Dkt. 38), and the Government responded in opposition on July 21, 2017 (Dkt. 40).
For the following reasons, Plaintiff's motion is granted in part and denied in part.
DISCUSSION
I. Plaintiff is Entitled to an Attorney's Fee Award Pursuant to the EAJA
A. Legal Principles
The [EAJA] provides that "a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."
Vincent v. Comm'r of Soc. Sec. , 651 F.3d 299, 302-03 (2d Cir. 2011) (quoting 28 U.S.C. § 2412(d)(1)(A) ). "Thus, under the EAJA, 'eligibility for a fee award in any civil action requires: (1) that the claimant be a "prevailing party"; (2) that the Government's positions was not "substantially justified"; [and] (3) that no "special circumstances make an award unjust.' " " Gomez-Beleno v. Holder , 644 F.3d 139, 144 (2d Cir. 2011) (quoting Comm'r, INS v. Jean , 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) ).
B. Plaintiff's Status as a "Prevailing Party"
"[S]tatus as a prevailing party is conferred whenever there is a 'court ordered chang[e] [in] the legal relationship between [the plaintiff] and the defendant' or a 'material alteration of the legal relationship of the parties.' " Vacchio v. Ashcroft , 404 F.3d 663, 674 (2d Cir. 2005) (quoting Pres. Coal. of Erie Cty. v. Fed. Transit Admin. , 356 F.3d 444, 451 (2d Cir. 2004) ). It is well-established that a litigant who has received a district court's decision vacating the decision of the Social Security Commissioner and remanding for further consideration pursuant to sentence four of Section 405(g) of the Social Security Act is a "prevailing party" for purposes of the EAJA. See Shalala v. Schaefer , 509 U.S. 292, 300-02, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (rejecting the argument that the status of a "prevailing party" may only be conferred once the remanded administrative proceedings are complete, and stating that "[n]o holding of this Court has ever denied prevailing-party status (under § 2412(d)(1)(B) ) to a plaintiff who won a remand order pursuant to sentence four of § 405(g)");
*129 Powers v. Colvin , No. 14-CV-599-JTC, 2016 WL 1165308, at *7 n.5 (W.D.N.Y. Mar. 25, 2016) ("It is noted that a plaintiff who wins remand of a Social Security appeal pursuant to sentence four of 42 U.S.C. § 405(g) is a 'prevailing party' for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)...."); Rugless v. Comm'r of Soc. Sec. , No. 6:11-CV-6624 (MAT), 2014 WL 2648772, at *2 (W.D.N.Y. June 13, 2014) ("Plaintiff argues that he is a 'prevailing party' because the Second Circuit remanded the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). The Court agrees." (citations omitted) ).
The Third, Seventh, and Ninth Circuits have all concluded that "a remand to the [Board of Immigration Appeals] in an immigration case is essentially the same as a 'sentence-four' remand in a Social Security case" for purposes of conferring "prevailing party" status. Johnson v. Gonzales , 416 F.3d 205, 209 (3d Cir. 2005) ; see Muhur v. Ashcroft , 382 F.3d 653, 655 (7th Cir. 2004) (holding that the court "cannot see any difference between" the reversal of an asylum application and remand "back to the immigration service for further proceedings," and the Social Security remand at issue in Schaefer ); Rueda-Menicucci v. I.N.S. , 132 F.3d 493, 495 (9th Cir. 1997) ("[W]e can perceive no difference between a 'sentence four' remand under § 405(g) and a remand to the [Board of Immigration Appeals] for further proceedings." (footnote omitted) ). The Second Circuit, citing Johnson with favor, has also confirmed "that EAJA awards may be given-subject, of course, to the conditions set forth in the statute-in connection with successful petitions for review of decisions of the [Board of Immigration Appeals]." Gomez-Beleno , 644 F.3d at 144-45 (granting the EAJA award where the Second Circuit had previously vacated the underlying immigration decision and remanded for further consideration).
Here, the Government's submissions do not dispute that the Court's January 18, 2017, Decision and Order, which set aside the USCIS's denial of the Petition and remanded to the agency for further consideration, amounted to a "court ordered chang[e] [in] the legal relationship between [Plaintiff] and the [Government] or a material alteration of the legal relationship of the parties." Vacchio , 404 F.3d at 674 (quotation marks and citation omitted); see, e.g., Gomez-Beleno , 644 F.3d at 144-45. Accordingly, the Court easily concludes that Plaintiff is a "prevailing party" for purposes of the EAJA.
C. The Government's Position Was Not "Substantially Justified"
The Government "bears the burden of showing that [its] position was 'substantially justified,' which the Supreme Court has construed to mean 'justified to a degree that could satisfy a reasonable person.' " Ericksson v. Comm'r of Soc. Sec. , 557 F.3d 79, 81 (2d Cir. 2009) (quoting Pierce v. Underwood , 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ). "[I]t is well-established that the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not 'substantially justified.' " Healey v. Leavitt , 485 F.3d 63, 67 (2d Cir. 2007) (quotation marks and citation omitted); see Gomez-Beleno , 644 F.3d at 145 ("[O]ur 'substantial justification' inquiry encompasses not only the litigation position of the Office of Immigration Litigation ('OIL'), but also the underlying administrative decisions...."); Ericksson , 557 F.3d at 82 ("When assessing the 'position of the United States,' we review both 'the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based.' " (quoting 28 U.S.C. § 2412(d)(2)(D) ) );
*130 Smith v. Bowen , 867 F.2d 731, 734 (2d Cir. 1989) ("Congress made clear that for EAJA purposes, a court should inquire into both the underlying agency determination affecting the party, as well as the Government's litigation strategy in defense of that determination.").
In his written submissions and at oral argument, Plaintiff cited Healey v. Leavitt , 485 F.3d 63 (2d Cir. 2007) for the proposition that the Government can only meet this burden by making a "strong showing" that its position was "substantially justified." Id. at 67. Although this is a correct recitation of the law, to the extent that Plaintiff claims that this standard is somehow more exacting than that set forth in Pierce , the Second Circuit has rejected such a position in a published decision. Ericksson , 557 F.3d at 82 n.1 ("To the extent our recent decision in Healey v. Leavitt indicates that the government must make a 'strong showing' to satisfy its burden under § 2412(d)(1)(A), we do not understand that case to impose a standard higher than that set forth in [ Pierce ]." (citations omitted) ); see also Pierce , 487 U.S. at 565, 108 S.Ct. 2541 (rejecting the connotation that "substantially justified" requires the position to be "justified to a high degree," and adopting the principle that it must only be "justified in substance or in the main"); Padula v. Colvin , 602 Fed.Appx. 25, 27 (2d Cir. 2015) (same). Nevertheless, the Court finds that the Government has failed to carry its burden in this case.
1. The Parties' Arguments
The Government contends that the "position of the United States" was "substantially justified" at both the administrative level and throughout the underlying civil litigation. (Dkt. 33 at 2). Specifically, the Government claims that it reasonably believed that it had satisfied its due process obligations by informing Plaintiff that "written notice of its decision would be sent to him and that he should notify USCIS immediately if it had his incorrect address." (Id. ). The Government also argues that Plaintiff was on notice "through regulation that future correspondence would be sent to his last known address and that his petition might be abandoned for failure to respond to any Request for Evidence." (Id. (citing 8 C.F.R. §§ 103.2, 103.8 ) ).
Plaintiff argues that the Government's position at the administrative level and throughout the underlying civil litigation was directly contrary to the Supreme Court's decision in Jones v. Flowers , 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). (Dkt. 31-6 at 13-16). In Jones , the Court addressed the due process obligations of the government once it issued notice of a real property tax sale, but after that notice was "returned undelivered." See id. at 225, 126 S.Ct. 1708. In support of his motion for summary judgment, Plaintiff argued that because the Government was aware that the mailings to his last known address were returned as undeliverable, the Government was obligated to take additional reasonable steps to notify him of any action taken upon the Petition before denying it. (See Dkt. 18-1 at 14-17). Plaintiff relied heavily on Jones in support of his argument, and, in ruling in his favor, the Court agreed with Plaintiff's position under the principles set forth by the Supreme Court in that decision. (Dkt. 29 at 17-25). On his present motion, Plaintiff now argues that the Government's position was not substantially justified because it contradicted the holding in Jones . (Dkt. 31-6 at 15-16).
"The first question in any due process inquiry is whether the plaintiff has a constitutionally protected interest." DeMichele v. Greenburgh Cent. Sch. Dist. No. 7 , 167 F.3d 784, 789 (2d Cir. 1999). In its reply papers in support of its motion *131 for summary judgment, the Government conceded that Plaintiff "does likely have a protected interest in the mere adjudication of his Form I-130." (Dkt. 23 at 2 n.1). In its January 18, 2017, Decision and Order, the Court ultimately held that "a constitutionally protected property interest attaches... to the adjudication of Plaintiff's Form I-130 petition" (Dkt. 29 at 16), and thus, there is no need to rehash that analysis here. Relying on Jones , the Court further determined that the notice afforded to Plaintiff did not satisfy due process standards. (Id. at 17-27). Even though this Court found the Government's arguments to be without merit in the underlying proceedings, the question now becomes whether those same arguments at least "had a 'reasonable basis both in law and fact.' " Ericksson , 557 F.3d at 82 (quoting Pierce , 487 U.S. at 563, 108 S.Ct. 2541 ); see Hills v. Sec'y of U.S. Dep't of Health & Human Servs. , 726 F.Supp. 434, 435 (E.D.N.Y. 1989) ("Clearly, the government's position does not lack substantial justification simply because the plaintiff prevailed.").
2. The Legal Principles Set Forth in Jones Are Directly Applicable to the Instant Matter
The Supreme Court's decision in Jones was binding precedent at the time of the administrative decision to deny the Petition, and throughout the underlying civil litigation before this Court. See generally Mitchell v. Berryhill , No. 1:14-CV-00418 (MAT), 2017 WL 1047360, at *2 (W.D.N.Y. Mar. 17, 2017) ("Considering the well-established precedent, the Court rejects the Commissioner's argument that its position in the underlying case was 'substantially justified' for purposes of the EAJA."); Pavia v. Comm'r of Soc. Sec. , No. 5:10-CV-0818 (GTS/DEP), 2013 WL 5652497, at *6 (N.D.N.Y. Oct. 15, 2013) ("[The d]efendant's position was not substantially justified at the agency level or when this case was filed. [The d]efendant, acting through the [administrative law judge], and later, by defending the [administrative law judge]'s flawed position, defied well-established authority ... and precedent in such a way that no reasonable person would find it justified."); Brown v. Sullivan , 724 F.Supp. 76, 78 (W.D.N.Y. 1989) ("A position of the Secretary which is contrary to clearly established circuit precedent obviously cannot have a reasonable basis in the law." (quotation marks and citation omitted) ).
The Government argues that because the facts in Jones differ in several ways from those presented in the instant matter, the Government's position that Jones did not apply was a reasonable one. (Dkt. 33 at 3-4). The Court disagrees. The Government's position must be reasonable "both in law and fact." Pierce , 487 U.S. at 563, 108 S.Ct. 2541 (emphasis added) (quotation marks omitted). Furthermore, the case law and Jones itself directly contradict many of the Government's arguments.
The Government argues that Jones involved a tax sale of real property, which the plaintiff was unaware of at the time the notice was sent. (Dkt. 33 at 3 & n.2). By contrast, Plaintiff "affirmatively filed his petition," "was aware that the USCIS was adjudicating his petition," and was on notice that it was his obligation to keep his address current. (Id. at 3). In addition, the Government contends that many of the cases cited by Plaintiff during this litigation involved "proceedings initiated by the government to deprive the person of property." (Id. at 3 & n.2).
The Court agrees that the instant matter entailed several factual issues that differed from those involved in Jones . In fact, the Government is quick to point out that this Court acknowledged the absence of a directly applicable factual scenario during oral argument on the summary judgment motions. (Id. at 4; see Dkt. 28 at 39).
*132 However, just as this Court determined in its January 18, 2017, Decision and Order, the legal issues raised by the Government's arguments are "similar" to those resolved in Jones . (Dkt. 29 at 17). For this reason, the Government's attempt to cabin the application of Jones to forfeiture cases was unpersuasive. Notably, the due process principles set forth in Jones have been applied in many other contexts. See Echavarria v. Pitts , 641 F.3d 92, 95 & n.2 (5th Cir. 2011) (collecting cases), as revised (June 21, 2011); see also Rendon v. Holder , 400 Fed.Appx. 218, 219 (9th Cir. 2010) (finding that the immigration services "took the necessary 'additional reasonable steps' to locate [the plaintiff's] address after the August 14, 1992 Notice of Intent to Deny (sent by certified mail to [the plaintiff's] address of record) was returned unclaimed" (quoting Jones , 547 U.S. at 234, 126 S.Ct. 1708 ) ); Peralta-Cabrera v. Gonzales , 501 F.3d 837, 845 (7th Cir. 2007) (noting no disagreement with the proposition "that an alien has a duty to provide immigration authorities with an address where he can be contacted," but stating that "in most instances, it is the government's responsibility to ensure that notice by mail is successfully delivered" (citing Jones , 547 U.S. 220, 126 S.Ct. 1708 ) ). Although the Jones case involved a tax sale of real property, the relevant legal doctrine arising from that decision is soundly grounded in due process principles.
Indeed, the "new wrinkle" that was at the core of the Jones decision required the Court to determine how the government's obligation to issue constitutionally sufficient notice changed once it became aware that the notice rendered was insufficient. Jones , 547 U.S. at 226-27, 126 S.Ct. 1708. Where such knowledge is not present, the Supreme Court has held that "the Due Process Clause ... requires only that the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the action...." Dusenbery v. United States , 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (quoting Mullane v. Cent. Hanover Bank & Tr. Co. , 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ); cf. Jones , 547 U.S. at 226, 126 S.Ct. 1708 ("In each of these cases, the government attempted to provide notice and heard nothing back indicating that anything had gone awry...."). Put differently, the central question before the Court was "whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed." Jones , 547 U.S. at 227, 126 S.Ct. 1708. The Court answered that question in the affirmative, holding that "additional reasonable steps" must be taken to apprise the party before the property interest may be extinguished, where it is "practicable to do so." Id. at 225, 126 S.Ct. 1708.
The Government's further argument that its actions were reasonable because Plaintiff had an obligation to update his address is also without merit. Jones explicitly determined that even though the plaintiff failed to adhere to his statutory obligation to maintain an updated address, this did not absolve the Government of its constitutional duty to render sufficient notice. Jones , 547 U.S. at 232, 126 S.Ct. 1708 ; see Mennonite Bd. of Missions v. Adams , 462 U.S. 791, 799, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) ("[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.").
Furthermore, as the Court determined in its January 18, 2017, Decision and Order, the Government's argument that Plaintiff's initiation of the administrative proceedings absolves it of the duty of performing "additional reasonable steps" to ensure constitutionally sufficient notice is based upon a faulty understanding of the function of constitutional rights. (Dkt. 29 at 19-20 n.13). Although the Court was *133 unable to find anything directly on point regarding this argument, it is the Government's burden to demonstrate that its position was reasonable. See, e.g., Ericksson , 557 F.3d at 81. As the Government has cited to no case support for the proposition that Plaintiff's right to constitutionally sufficient notice is somehow diluted by the fact that he, rather than the Government, had commenced the administrative proceedings, the Court rejects this contention. See generally Rendon , 400 Fed.Appx. at 219 (applying the principles set forth in Jones where the plaintiff had initially filed an application for legalization).
Finally, the Government attempts to satisfy its burden by pointing to Plaintiff's argument that he should receive an enhanced fee award due to his counsel's specialized expertise. (See Dkt. 33 at 4 ("Plaintiff's request for increased fees beyond the statutory maximum on account of his attorney's great skill and experience also calls into question his claim that the Government's position was not substantially justified.") ). This argument misconstrues the purpose of the "special factor" exception. This exception to the EAJA statutory fee cap is discussed further below, but it suffices to say that the Government's conclusion that its position was substantially justified does not follow from the fact that a plaintiff's attorney possesses "distinctive knowledge or specialized skill needful for the litigation in question." See Pierce , 487 U.S. at 572, 108 S.Ct. 2541. Such "distinctive knowledge or specialized skill" is not demonstrated by overcoming the Government's "substantially justified" position. Cf. Healey , 485 F.3d at 69 ("The [Supreme] Court identified 'an identifiable practice specialty such as patent law, [and] knowledge of foreign law or language' as examples of the 'distinctive knowledge' that would justify an enhanced award under the statute." (quoting Pierce , 487 U.S. at 572, 108 S.Ct. 2541 ) ). In fact, no prevailing party could ever secure a fee enhancement under the "special factor" exception if the knowledge and skill of the plaintiff's attorney suggested that the government's position was "substantially justified." This reasoning flips the Government's burden of establishing its position to have been "substantially justified" on its head. Accordingly, the Court rejects this line of argument.
For the foregoing reasons, the Government's attempts to distinguish Jones are without merit. Here, the Government sent three notices to Plaintiff's last known address in Maryland, and each was returned as undelivered with a note indicating that Plaintiff had since moved away from that location. (Dkt. 18-2 ¶¶ 24-27; Dkt. 21-2 at 2). The Government proceeded to deny the Petition without attempting to make any additional efforts to notify him. In doing so, the Government deprived Plaintiff of a constitutionally protected property interest without rendering sufficient notice, and without even attempting to pursue further reasonable steps. Such was the situation presented in Jones , and applying the principles set forth by the Supreme Court in that decision, this Court came to the same conclusion on Plaintiff's summary judgment motion. (Dkt. 29 at 17-27). Accordingly, the Court finds that the Government's position did not have a "reasonable basis both in law and fact" because it directly contradicted then-existing Supreme Court precedent. See Pierce , 487 U.S. at 563, 108 S.Ct. 2541.
Therefore, the Court concludes that the Government failed to carry its burden of demonstrating that its position was "substantially justified" for purposes of the EAJA.
D. No Special Circumstances Warrant a Reduction or a Denial of the EAJA Award
"Even if an agency's position was not substantially justified, fees may be denied *134 or reduced under the EAJA if a court finds that 'special circumstances make an award unjust.' " Salvo v. Comm'r of Soc. Sec. , 751 F.Supp.2d 666, 671 (S.D.N.Y. 2010) (quoting 28 U.S.C. § 2412(d)(1)(A) ). "The EAJA's 'special circumstances' exception is a 'safety valve' that gives 'the court discretion to deny awards where equitable considerations dictate an award should not be made.' " Vincent , 651 F.3d at 303 (quoting Scarborough v. Principi , 541 U.S. 401, 422-23, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) ). "The special circumstances provision of the statute 'explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party.' " United States v. 27.09 Acres of Land, More or Less, Situated in Town of Harrison & Town of N. Castle , 43 F.3d 769, 772 (2d Cir. 1994) (quoting Oguachuba v. I.N.S. , 706 F.2d 93, 98 (2d Cir. 1983) ); see McKay v. Barnhart , 327 F.Supp.2d 263, 267 (S.D.N.Y. 2004) ("Courts look to traditional equitable principles when deciding whether special circumstances would make an award of attorney's fees unjust.").
The Second Circuit has stated that the "special circumstances" exception may apply "when [a prevailing party's] own misconduct created the circumstances that led to the litigation, and when that party's contributions to the litigation's success were marginal, duplicative and unnecessary." Vincent , 651 F.3d at 304 (quotation marks and citations omitted). "The burden of establishing 'special circumstances' that may justify reducing a fee award is on the government." Salvo , 751 F.Supp.2d at 671 (citing Mid-Hudson Legal Servs., Inc. v. G & U, Inc. , 578 F.2d 34, 38 (2d Cir. 1978) ). "District courts 'retain a measure of discretion in applying the special circumstances exception.' " Martinez v. Astrue , No. 08-CV-0117(NAM/DRH), 2010 WL 890953, at *3 (N.D.N.Y. Mar. 9, 2010) (quoting Webb v. Astrue , 525 F.Supp.2d 1329, 1334 (N.D. Ga. 2007) ).
The Government argues that "special circumstances" should preclude a grant of attorney's fees since Plaintiff "admitted that [his] own oversight contributed to [the Petition]," because he failed to update his changed address. (Dkt. 33 at 5 (quotation marks and citation omitted) ). Specifically, the Government argues that the Court should apply the equitable doctrine of in pari delicto.[3] Plaintiff replies that even if he had an obligation to update his address, "it would not have excused the Government's failure to take reasonable additional steps to notify [him]." (Dkt. 34 at 7-8).
1. The Equitable Doctrine of In Pari Delicto Does Not Apply
At the outset, the Court has not found any case expressly applying the in pari delicto doctrine in the context of an EAJA fee application, and the Government has not provided any case law suggesting that it would be appropriate in such a case. "The doctrine of in pari delicto means more than just 'two wrongs make a right.' To begin with, application of the doctrine requires that the plaintiff be 'an active, voluntary participant in the unlawful activity that is the subject of the suit.' " BrandAid Mktg. Corp. v. Biss , 462 F.3d 216, 218 (2d Cir. 2006) (quoting Pinter v. Dahl , 486 U.S. 622, 636, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) ).
Whether or not the doctrine of in pari delicto may ever be appropriate in the *135 EAJA context is of no concern because this doctrine is clearly inapplicable under the facts presented here. Although Plaintiff admitted that his failure to contact the USCIS contributed to the denial of the Petition (Dkt. 14-2 at 20-21), Plaintiff's actions in no way caused the Government to default upon its obligations under the Due Process Clause. See BrandAid Mktg. Corp. , 462 F.3d at 218 ("Whatever misrepresentations [the plaintiff] may have made about its condition, there is no suggestion that this in any way caused [the defendant] to use fraud and other unlawful conduct to attempt its purchase and hostile takeover."). Indeed, that conclusion is akin to the rationale employed by Jones and prior Supreme Court precedent, which holds the government accountable for its constitutional duties in the face of a plaintiff's failure to otherwise preserve his rights. See, e.g., Jones , 547 U.S. at 232, 126 S.Ct. 1708 ; Mennonite Bd. of Missions , 462 U.S. at 799, 103 S.Ct. 2706.
2. Plaintiff's Failure to Update His Mailing Address Does Not Constitute "Special Circumstances"
Although a prevailing party's "own misconduct" may lead to "special circumstances" warranting the denial of a fee award, see Vincent , 651 F.3d at 304, this is not such a case. In Oguachuba , the plaintiff had "violated American law in numerous ways hoping to cause a technical error by the [immigration services] which would allow him to remain in this country." Oguachuba , 706 F.2d at 99. The Second Circuit denied the plaintiff an attorney's fee award because it would be "plainly inequitable to allow [the plaintiff] to flout American law in this fashion," and then seek public funding of his legal bills. Id. Plaintiff's failure to contact the USCIS with an updated address is a far cry from the repeated and extensive misconduct described in Oguachuba . The present facts do not demonstrate that Plaintiff attempted "to flout American law" in any fashion. Instead, Plaintiff apparently overlooked the requirement to contact the USCIS with a change of address as his focus was placed upon "starting a new surgical dental practice, moving to a new state and moving an entire household." (Dkt. 14-2 at 20). In fact, Plaintiff, while mistaken, "completed a change of address with the United States Postal Service" after he had moved to Rochester, "and believed in good faith that this would sufficiently notify the federal government, included USCIS, of his new address." (Dkt. 18-2 at ¶ 7; Dkt. 21-2 at 2).
Although Plaintiff could have been more diligent, any error committed by Plaintiff in this regard does not warrant the denial or the reduction of his award for attorney's fees under the EAJA. The "special circumstances" factor is often associated with some form of bad faith or obstinate conduct. See, e.g., Oguachuba , 706 F.2d at 99 ; see also McKay , 327 F.Supp.2d at 268 ("[M]any courts have found that special circumstances under the EAJA exist in cases where the plaintiff unreasonably rejects the Government's offer to remand the case and a remand is the court's ultimate remedy."); Bryant v. Apfel , 37 F.Supp.2d 210, 213 (E.D.N.Y. 1999) (finding that special circumstances existed where the plaintiff's counsel failed to develop the record after receiving "critical medical records from the period of [the] plaintiff's claimed disability"); see generally Diamond Sawblades Mfrs. Coal. v. United States , 816 F.Supp.2d 1342, 1359 (Ct. Int'l Trade 2012) ("Generally speaking, the special circumstances provision prevents recovery when the petitioning party has engaged in bad faith behavior and equitable considerations ('unclean hands') indicate an award would be unjust."). The instant circumstances present nothing close to any such improper behavior. Furthermore, having concluded that the doctrine of in pari delicto does *136 not apply to this case, the Government fails to set forth how Plaintiff's conduct "violated any other specific equitable principles." Torres v. Barnhart , No. 02 Civ. 9209 (AJP), 2007 WL 1810238, at *13 (S.D.N.Y. June 25, 2007).
Therefore, the Court concludes that the Government has failed to satisfy its burden of demonstrating that "special circumstances" warrant the denial or reduction of the EAJA award. See generally id. ("That few courts apparently have relied upon this [special circumstances] exception to EAJA awards in denying fee applications is evidence that the circumstances of a case will infrequently justify a denial of an award." (quoting Taylor v. United States , 815 F.2d 249, 253 (3d Cir. 1987) ) ).
II. Plaintiff is Entitled to a Reasonable Award for Attorney's Fees Accrued While Pursuing the Underlying Action
A. The EAJA Statutory Fee Cap
"The hourly rate an attorney may receive under the EAJA is statutorily capped. For cases commenced on or after March 29, 1996, the rate is fixed at $125 per hour." Marschok v. United States , 150 F.Supp.2d 522, 525 (E.D.N.Y. 2001) (citations omitted); see 28 U.S.C. § 2412(d)(2)(A). Nonetheless, a court may award attorney's fees calculated at a higher rate if "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Plaintiff argues for an enhanced fee award under both the "cost of living" and "special factor" exceptions. (Dkt. 31-6 at 20-25). The Court first turns to address the applicability of both exceptions.
B. Plaintiff is Entitled to a Cost of Living Enhancement
As noted above, "[t]he EAJA sets the maximum billing rate for attorneys' fees at $125.00 per hour, but allows the Court to adjust this maximum rate upward for annual increases in the cost of living." Beiro v. Astrue , No. 08-CV-0304 (ADS), 2009 WL 9057735, at *5 (E.D.N.Y. Nov. 23, 2009). "The 'cost of living' adjustment to be applied is that measured by the Consumer Price Index ('CPI'). The court must apply a different cost of living adjustment for each year in which hours were billed, rather than applying a single adjustment to the total hours billed." Sergenton v. Astrue , 714 F.Supp.2d 412, 418 (E.D.N.Y. 2010) (citing Kerin v. U.S. Postal Serv. , 218 F.3d 185, 194 (2d Cir. 2000) ). Any such adjustment is "calculated by multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ('CPI-U') for the years in which counsel's work was performed, and then dividing by the CPI-U figure for March 1996, the effective date of EAJA's $125 statutory rate." Thangaraja v. Gonzales , 428 F.3d 870, 876-77 (9th Cir. 2005) ; see Butts v. Astrue , 565 F.Supp.2d 403, 406 n.3 (N.D.N.Y. 2008) ("The equation to determine the hourly rate is: $125 (statutory limit) multiplied by the average CPI-U for [the] targeted year; the total is divided by the CPI-U from March 1996."); see also D'Alessandro v. Mukasey , No. 08-CV-914(RJA)(VEB), 2010 WL 1404909, at *20 (W.D.N.Y. Mar. 31, 2010) ("As per the Second Circuit's case law, the Court has calculated this increase based on the Consumer Price Index for the urban areas of the Northeastern United States." (citing Barwari v. Mukasey , 282 Fed.Appx. 896, 899 (2d Cir. 2008) )), report and recommendation adopted , No. 08-CV-914, 2010 WL 2710623 (W.D.N.Y. July 6, 2010). "[I]t is entirely within the discretion of district courts to *137 determine whether an increase in the cost of living justifies a higher fee." Martin v. Sec'y of Army , 463 F.Supp.2d 287, 293 (N.D.N.Y. 2006).
The Government does not challenge the "cost of living" enhancement. (Dkt. 33); see Stanchfield v. Astrue , No. 3:09CV2105 (WWE), 2012 WL 1069174, at *1 (D. Conn. Mar. 29, 2012) ("The Commissioner does not challenge this rate and the Court finds the higher fee is justified."); Santos v. Astrue , 752 F.Supp.2d 412, 417 (S.D.N.Y. 2010) ("[The plaintiff's] proposed hourly rate ... [is] based upon the most recent Consumer Price Index for All Urban Consumers (CPI-U) published by the U.S. Department of Labor, Bureau of Labor Statistics. The Commissioner does not dispute these rates and the Court finds them to be reasonable." (footnote and citation omitted) ); see also Castaneda-Castillo v. Holder , 723 F.3d 48, 76-77 (1st Cir. 2013) ("Given that the government does not oppose [the plaintiff]'s request for a cost-of-living adjustment, or that said adjustment be computed based on the regional, as opposed to national, CPI, we find that [the plaintiff] is eligible for the requested enhancement."). Furthermore, the Court agrees with Plaintiff that he is entitled to a "cost of living" enhancement. In applying the formula discussed above, the Court multiplies the $125 statutory rate by the annual average CPI-U for all urban consumers in the years of 2015 and 2016-252.185 and 254.850, respectively. United States Department of Labor, Bureau of Labor Statistics, CPI-All Urban Consumers: 1996-2018, https://data.bls.gov/pdq/SurveyOutputServlet (last visited March 16, 2018). The resulting values were then divided by 162.8, which was the monthly CPI-U for all urban consumers in March 1996. (Id. ).
These calculations provide the following values: 193.63 for 2015, and 195.67 for 2016.[4] As such, the Court concludes that the hourly rates for all reasonable attorney's hours accruing in 2015 and 2016 are $193.63 and $195.67, respectively. See United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars , 438 F.Supp.2d 67, 70 (E.D.N.Y. 2006) ("The court must apply a different cost of living adjustment for each year in which hours were billed, rather than applying a single adjustment to the total hours billed.") aff'd , 242 Fed.Appx. 750 (2d Cir. 2007) ; see also Kerin , 218 F.3d at 194 ("[B]ecause work on this case 'began in 1989 and continued for approximately [nine] years,' the hourly rate under § 2412(d)(1)(A) should only be increased by the corresponding Consumer Price Index for each year in which the legal work was performed."). The Court now turns to Plaintiff's request for a "special factor" enhancement to his fee award.
C. Plaintiff is Not Entitled to a "Special Factor" Enhancement
"[T]he exception for 'limited availability of qualified attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." Pierce , 487 U.S. at 572, 108 S.Ct. 2541. Such attorneys must have "some distinctive knowledge or specialized skill needful for the litigation in question-as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." Id. "The *138 [Supreme] Court identified 'an identifiable practice specialty such as patent law, [and] knowledge of foreign law or language' as examples of the 'distinctive knowledge' that would justify an enhanced award under the statute." Healey v. Leavitt , 485 F.3d 63, 69 (2d Cir. 2007) (quoting Pierce , 487 U.S. at 572, 108 S.Ct. 2541 ). The "special factor" exception "must be interpreted narrowly and cannot be read to encompass situations in which normally skilled and qualified attorneys are simply in short supply." Wells v. Bowen , 855 F.2d 37, 42 (2d Cir. 1988).
Plaintiff argues that Jeffrey A. Wadsworth, Esq. ("Wadsworth"), a partner with Harter Secrest & Emery ("HS&E"), gained extensive experience "in the areas of constitutional, administrative, and immigration law litigation" while in private practice and while working for the United States Department of Justice's Office of Immigration Litigation. (Dkt. 31-6 at 23). Plaintiff contends that "[t]hese qualifications and experience were important to [his] success in this case, and justify a higher fee." (Id. at 24). The Government contests the application of the "special factor" enhancement in this case because "due process and administrative procedure issues do not require" the type of distinctive and specialized knowledge required for a fee enhancement. (Dkt. 33 at 6). The Government also contends that no "specialized knowledge of the Immigration and Nationality Act or corresponding agency policies and procedures" was required in the instant matter. (Id. at 7).
Although it is quite clear that Plaintiff benefited from an attorney with significant experience, that Wadsworth's participation was "important to Plaintiff's success in this case" does not necessarily mean that it was "essential." Atl. Fish Spotters Ass'n v. Daley , 205 F.3d 488, 492 (1st Cir. 2000) ("[T]he question is not whether counsel's experience in fisheries law is helpful or productive but whether it is essential for competent representation."); see Healey , 485 F.3d at 69 ("The attorneys here, while undisputably experienced in the practice of Medicare law, do not possess 'distinctive knowledge or specialized skill needful for the litigation in question.' " (quoting Pierce , 487 U.S. at 572, 108 S.Ct. 2541 ) ); Raines v. Shalala , 44 F.3d 1355, 1361 (7th Cir. 1995) ("[T]he appropriate inquiry is whether the individual case presents such an 'unusual' situation that it requires someone of 'specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles.' " (citation omitted) ). Certainly, this case involved interesting due process issues in the context of immigration law. However, Plaintiff does not present evidence that Wadsworth's experience in these areas of legal practice were required for his success.
An attorney's knowledge of administrative law, complex class action procedure, and Medicare statutory and regulatory provisions do not, without more, establish the appropriateness of the "special factor" enhancement. See Healey , 485 F.3d at 69. Wadsworth's familiarity with constitutional, administrative, and immigration law come from his years in practice, but substantial experience alone does not demonstrate entitlement to an enhanced fee. See id. at 70 ("[A] case requires 'specialized expertise' within the meaning of the EAJA only when it requires some knowledge or skill that cannot be obtained by a competent practicing attorney through routine research or legal experience." (emphasis added) ); In re Sealed Case 00-5116 , 254 F.3d 233, 235-36 (D.C. Cir. 2001) ("[L]awyers practicing administrative law typically develop expertise in a particular regulated industry, but this expertise comes from experience, *139 not from specialized training. If expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements." (quotation marks and citations omitted) ); see also Atl. Fish Spotters Ass'n , 205 F.3d at 492 ("It is almost always helpful for counsel to have had prior experience in the area, usually the more the better. But in most cases an otherwise competent lawyer can-albeit at the cost of some extra time-learn enough about the particular controversy to litigate in the area adequately, although perhaps not as well as a long-time specialist."); see generally Dubose v. Pierce , 857 F.2d 889, 892 (2d Cir. 1988) (affirming the district court's decision not to enhance the fee award where the plaintiffs argued that the unenhanced award did not reflect "the success achieved and the skill of the attorneys").
While the legal thicket of constitutional principles can certainly raise complex issues, principles of due process are "not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice." Healey , 485 F.3d at 70 (quoting Chynoweth v. Sullivan , 920 F.2d 648, 650 (10th Cir. 1990) ). If the Court enhanced the fee award based upon Wadsworth's experience litigating constitutional, administrative, and immigration law in the private and public sector, the court "might risk making enhanced compensation under the EAJA the rule rather than the exception it was meant to be." Id. at 71. Accordingly, the Court denies Plaintiff's request to enhance the fee award based upon the "special factor" exception.
D. The Number of Hours Spent on the Initial Application was Reasonable
On an EAJA fee application, "[t]he Court must determine if the hours expended and the rates charged are reasonable, and the fee applicant has the burden to establish the reasonableness of both." Hogan v. Astrue , 539 F.Supp.2d 680, 682 (W.D.N.Y. 2008). "The Court also has broad discretion to determine the amount of time reasonably expended." Colegrove v. Barnhart , 435 F.Supp.2d 218, 220 (W.D.N.Y. 2006).
Here, the Government does not challenge as unreasonable the number of hours accrued during the underlying litigation. See Ceglia v. Zuckerberg , No. 10-CV-00569A (F), 2013 WL 1945544, at *5 (W.D.N.Y. May 9, 2013) (finding that "by failing to submit any evidence challenging the accuracy and reasonableness of the hours charged, [the plaintiff] has waived such objection," and further noting that there was no basis to reduce the number of hours "to 'trim the fat' from the fee request" (citations omitted) ); Lewis v. City of Albany Police Dep't , 554 F.Supp.2d 297, 299 (N.D.N.Y. 2008) (noting that "[the defendant] does not argue that the requested number of hours is unreasonable," and stating that "[t]hus, the issue is what is the rate at which [the attorney] should be compensated"), aff'd , 332 Fed.Appx. 641 (2d Cir. 2009) ; Richards v. N.Y.C. Bd. of Educ. , No. 83 CIV. 7621 (CBM), 1988 WL 70209, at *2 (S.D.N.Y. June 27, 1988) ("Because the [defendant] does not dispute the number of hours claimed by counsel (although it does argue that some of those hours should be disallowed after calculation of the lodestar), this court need only determine whether the requested rate is reasonable."). The Court also finds that the requested number of hours is reasonable. Plaintiff requests that the Court issue a fee award for 211.5 total time-keeping hours accrued throughout the underlying civil litigation. (Dkt. 31-1 at ¶ 9; Dkt. 31-2). Of this total, 12.8 hours are allotted for the work performed by three paralegals, *140 83.3 hours for Wadsworth's work, and 115.4 hours for the work of Glenn R. Schieck, Esq. ("Schieck"), an associate with HS&E. (Dkt. 31-1 at ¶¶ 10-12).
The hours requested accrued between November 9, 2015, and December 21, 2016. (Dkt. 31-2). During that time, the parties filed competing motions for summary judgment that involved arguments grounded in constitutional, administrative, and immigration legal principles. (Dkt. 18; Dkt. 21). The Court heard oral argument on the motions (Dkt. 25), and then required the parties to file supplemental submissions. (See Dkt. 26; Dkt. 27). In light of these facts, and after a review of Plaintiffs itemized statement (Dkt. 31-2), the Court concludes that the requested number of hours is reasonable. See Aston v. Sec'y of Health & Human Servs. , 808 F.2d 9, 11-12 (2d Cir. 1986) (affirming the district court's allowance of a 200-hour EAJA fee award).
E. Plaintiff is Entitled to an Award for Paralegal Fees
"[A] prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates." Richlin Sec. Serv. Co. v. Chertoff , 553 U.S. 571, 590, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008). Here, Plaintiff argues that he is entitled to a paralegal fee award at a rate of $100 per hour. (Dkt. 31-1 at ¶ 17). The Government provides no argument in opposition to this requested rate. A court in this district recently concluded that "in the absence of proof from [the p]laintiff's counsel that $100 per hour is the prevailing local rate, ... $75 is the prevailing local hourly rate for paralegal staff." Jones v. Colvin , No. 6:14-CV-06316 (MAT), 2015 WL 6801830, at *4 (W.D.N.Y. Nov. 5, 2015) ; see Farbotko v. Clinton County of New York , 433 F.3d 204, 209 (2d Cir. 2005) ("To be sure, the fee applicant has the burden of showing by 'satisfactory evidence-in addition to the attorney's own affidavits'-that the requested hourly rates are the prevailing market rates." (quoting Blum v. Stenson , 465 U.S. 886, 896 at n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) )).
Here, Wadsworth's affidavit indicates that two of the paralegals that worked on this case had fifteen or more years of experience, and the third paralegal held thirty years of experience. (Dkt. 31-1 at ¶ 12). Their "standard regional billing rates ranged from $135 to $185 during the November 2015 to December 2016 period." (Id. ). Plaintiff has referenced one recent case in this district that issued an EAJA award for paralegal fees at a rate of $100 per hour. (Dkt. 31-6 at 22); see Dyer v. Colvin , No. 13-CV-6312P, 2016 WL 6404171, at *2 (W.D.N.Y. Oct. 28, 2016). In addition, the Court has found another recent case in this district that approved a $90 per hour rate for paralegal fees, see Warman v. Law Office of Daniel M. Slane , No. 14-CV-700(LJV), 2017 WL 971196, at *4 (W.D.N.Y. Mar. 13, 2017), and an even more recent case approving a $100 per hour rate, see Malik v. Hable , No. 09-CV-6283-FPG, 2017 WL 4324691, at *3 (W.D.N.Y. Sept. 29, 2017) (denying the plaintiff's requested rate of $150, as well as the defendants' suggested rate of $75, and finding "$100 to be appropriate for this district"); see also Douyon v. N.Y. Med. Health Care, P.C. , 49 F.Supp.3d 328, 348 (E.D.N.Y. 2014) ("In the Second Circuit, prevailing paralegal, law clerk and legal assistant rates have more recently been found to be anywhere from $70 to $100 per hour."). Moreover, the Court has been apprised of the paralegals' extensive experience, whereas in Warman , the court "received no indication of the experience of the respective paralegals who worked on th[e] case." Warman , 2017 WL 971196, at *4.
Therefore, the Court finds that $100 per hour is an appropriate rate for paralegals of this experience within this district.
*141 F. Fee Award Calculations on the Initial EAJA Application
Having found the number of hours requested to be reasonable, and having determined the appropriate rates to apply for the attorney and paralegal hours, respectively, the Court now calculates the fee award based upon the hours accrued in the underlying civil litigation. Accordingly, on the initial application, Plaintiff is awarded $1,280 for paralegal fees and $38,815.56 for attorney's fees accrued for both 2015 and 2016, which amounts to a total fee award of $40,095.56.
III. Plaintiff is Entitled to a Reasonable Supplemental Fee Award for the Time Accrued While Litigating the Initial EAJA Application
"It is well established that 'time reasonably spent by plaintiff's attorneys in establishing their fee [is] compensable.' " Black v. Nunwood, Inc. , No. 1:13-CV-7207-GHW, 2015 WL 1958917, at *7 (S.D.N.Y. Apr. 30, 2015) (quoting Gagne v. Maher , 594 F.2d 336, 344 (2d Cir. 1979), aff'd , 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) ); Diaz v. Paragon Motors of Woodside, Inc. , No. CV-03-6466 (CPS) (RML), 2008 WL 2004001, at *6 (E.D.N.Y. May 7, 2008) ("[A] prevailing plaintiff is clearly entitled to attorneys' fees incurred in litigating motions for attorneys' fees."). "Courts in this Circuit 'have usually limited fee application awards to an amount substantially less than the fees awarded on the main claim.' " Payne v. Kirkland , No. 14-CV-7098 (ALC), 2017 WL 5952707, at *5 (S.D.N.Y. Nov. 30, 2017) (quoting Black , 2015 WL 1958917, at *7 ). "Many courts have noted that the norm in this circuit is to allow fees for fees awards that account for between 8 and 24% of the total fee award." Black , 2015 WL 1958917, at *7.
In connection with the litigation of his EAJA motion, Plaintiff requests 7.0 hours for work performed by two paralegals, 22.4 hours for work performed by Wadsworth, and 52.7 hours for work performed by Michael J. Rooney, Esq. ("Rooney"), an associate with HS&E. (Dkt. 38 at ¶¶ 7, 10). The Government responds that Plaintiff failed to demonstrate that "he actually incurred those fees." (Dkt. 40 at 2). The Government also argues that 82.1 total timekeeper hours is an unreasonable amount of time spent preparing an EAJA fee application. (Dkt. 40 at 4-5). Plaintiff replies with a supplemental attorney declaration, which affirms that Plaintiff "has 'incurred' all of the fees and expenses requested through his fee application." (Dkt. 41 at 1).
As an initial matter, the Court is satisfied that Plaintiff has, in fact, incurred the fees that Plaintiff seeks to recover on this supplemental fee application based upon his attorney's sworn declaration. (Dkt. 41). However, the Court agrees with the Government that the number of hours requested is unreasonable.
A. The Number of Hours Requested is Unreasonable
Here, Plaintiff seeks a supplemental fee award covering 82.1 timekeeper hours. (Dkt. 38 at ¶ 6). However, this value represents almost 39% of the time claimed in litigating the underlying action. Such a request falls far outside the accepted range for supplemental fee applications in this Circuit. Accordingly, the Court concludes that "the fee claims are exorbitant [and] the time devoted to presenting them is unnecessarily high...." Gagne , 594 F.2d at 344.
The Government argues that the number of hours requested by Plaintiff is unreasonable and should be reduced to "something below the eight hours awarded" in Antonetti v. Barnhart , 438 F.Supp.2d 145 (W.D.N.Y. 2006). (Dkt. 40 at *142 5). Antonetti involved an EAJA application in the context of a Social Security benefits case. 438 F.Supp.2d at 147. The Commissioner of Social Security (the "Commissioner") moved "to remand the case for further administrative proceedings," after she "conceded certain errors" had occurred. Id. The plaintiff opposed the remand, and instead, cross-moved for judgment on the pleadings and "to remand solely for calculation and payment of benefits." Id. The Antonetti court granted the Commissioner's motion to remand, and the plaintiff then moved for an attorney's fee award pursuant to the EAJA. Id. at 147. The court then determined that 11.8 attorney hours spent on the EAJA application was "somewhat excessive," and reduced the number to 8.0 hours. Id. at 148.
The Government does not explain why Antonetti should apply to the present matter, which involved an EAJA fee application upon the resolution of issues pertaining to administrative and constitutional law.[5] The arguments asserted in the initial EAJA application required the parties to revisit the constitutional due process issues that were at the heart of Plaintiffs original motion for summary judgment. (See Dkt. 31-6 at 12-16; Dkt. 33 at 2-5; Dkt. 34 at 4-7). Although the Government did not dispute that Plaintiff was a "prevailing party" for purposes of the EAJA, it argued both that its position was "substantially justified," and that "special circumstances" warranted the denial of the application. (Dkt. 33). Plaintiff also requested fee enhancements under both the "cost of living" and "special factor" statutory exceptions, and the Government disputed the application of the "special factor" exception. (Dkt. 31-6 at 20-25; Dkt. 33 at 6-7; Dkt. 34 at 8-9). The Court heard oral argument on the initial EAJA fee application as well. (Dkt. 37).
Clearly, the initial EAJA application was heavily contested. Although the parties did rehash some of the same contentions already made in their summary judgment papers, the Court finds that the intersect of those arguments with the EAJA framework resulted in a generally more complex fee application. In reviewing the accepted range for supplemental fee applications in this Circuit, the Court finds that a "fee on fees" award amounting to 20% of the number of hours spent litigating the underlying action is appropriate. Black , 2015 WL 1958917, at *7 (reducing requested "fee on fees" award from 40% to 22% of the time claimed on original application); Diaz , 2008 WL 2004001, at *8 (reducing requested "fee on fees" award from 35% to 24% of the time claimed on the original application); Davis v. City of New Rochelle, N.Y. , 156 F.R.D. 549, 561 (S.D.N.Y. 1994) (reducing requested "fee on fees" award from 46% to 23% of the time claimed on the original application). In reducing the number of hours requested in a fee award application, the Second Circuit does not require a court to "scrutinize[ ] each action taken or the time spent on it...." Aston , 808 F.2d at 11. "Instead, the Court has discretion simply to apply a reasonable percentage reduction 'as a practical means of trimming fat from a fee application.' " Colegrove , 435 F.Supp.2d at 221 (quoting Kirsch v. Fleet Street, Ltd. , 148 F.3d 149, 173 (2d Cir. 1998) ).
*143 As such the Court will reduce the number of timekeeper hours requested to 42.3, or 20% of the total time claimed on the original application. The Court recognizes that this percentage is on the higher end of the range accepted by courts in this Circuit. Given the disputed nature of the original fee application, and the assertion of somewhat atypical issues, the Court determines that this award is appropriate. See Black , 2015 WL 1958917, at *7 (noting that while the award was "on the high end of the range typically awarded in this [C]ircuit," the award was "appropriate given the contested nature of the fees motion and the somewhat novel legal issue" involved); Diaz , 2008 WL 2004001, at *8 (noting that an award of 24% of the time claimed on the original application was justified because of the "defendants' opposition to the plaintiff's initial fees application" and because of "complex or novel" issues).
B. Fee Award Calculations on the Supplemental Fee Application
Since Plaintiff's timekeeper hours are divided among paralegals and attorneys, the Court must determine how much of the new total should be ascribed to paralegal work. Since the paralegal work represented approximately 8.5% of the original 82.1 hours requested, the Court will reduce the requested 7.0 paralegal hours proportionately to the new value of 42.3 total timekeeper hours. Thus, the Court attributes 3.6 hours to the work performed by paralegals on the initial fee application. The remaining 38.7 hours are attributed to the work performed by Wadsworth and Rooney.
Having decided the appropriate number of hours to ascribe to the supplemental fee application, the Court must also determine the reasonable rate to assess each hour of work performed. For the reasons discussed above, the Court assesses the paralegal work at a rate of $100 per hour. Plaintiff again contends that a "cost of living" enhancement be applied to the attorneys' hours. (Dkt. 38 at ¶ 8). The Court agrees.
The appropriate hourly rate for the work performed by the attorneys is again determined by reference to the CPI-U numbers and the associated equation used for making a cost of living enhancement. At the time this motion was filed, it appears that the United States Department of Labor Bureau of Labor Statistics had only calculated the CPI-U values for the months of January 2017 through May 2017. (See Dkt. 38 at ¶ 8 n.1). Plaintiff used the average of those CPI-U values to come to his requested hourly rate. (Id. ). Since that time, the average annual CPI-U for 2017 has been calculated to be 259.538, and the Court will use that value in determining an appropriate hourly rate. See, e.g., Thangaraja , 428 F.3d at 876-77 ; Butts , 565 F.Supp.2d at 406 n.3 ; see also United States Department of Labor, Bureau of Labor Statistics, CPI-All Urban Consumers: 1996-2018, https://data.bls.gov/pdq/SurveyOutputServlet (last visited March 16, 2018). Using the formula denoted above, the Court concludes that the appropriate hourly rate for attorneys' hours on the supplemental fee application is $199.28.
Accordingly, on Plaintiff's supplemental fee application, the Court awards $360 for paralegal fees, and $7,712.14 for attorney's fees, which results in a total supplemental fee award of $8,072.14. Plaintiff's combined fee award for both the initial and supplemental fee requests amounts to $48,167.70.
IV. Plaintiff is Entitled to Reasonable Costs and Expenses Pursuant to the EAJA
Finally, Plaintiff seeks certain costs and expenses associated with the underlying *144 civil litigation. Specifically, Plaintiff requests $702.50 for filing and service of process charges, $3.00 for Wadsworth's transportation expenses, $150.00 for mandatory mediation, and $170.00 for copying expenses. (Dkt. 31-1 at ¶ 17 & n.4; Dkt. 31-2 at 14).
"Reasonable out-of-pocket expenses are generally reimbursed as a matter of right in connection with an award of attorneys' fees." Barbour v. Colvin , 993 F.Supp.2d 284, 292 (E.D.N.Y. 2014) ; see Aston , 808 F.2d at 12 (noting that "all costs normally billed to [a] client [are] recoverable under EAJA" (citing Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan , 769 F.2d 1388, 1392 (9th Cir.), amended , 792 F.2d 762 (9th Cir. 1985) )).
Thus, in addition to the $48,167.70 already awarded, the Court also awards $1,025.50 for costs and expenses. Accordingly, Plaintiff's total award on this application for all reasonable attorney's fees, costs, and expenses is $49,193.20.
CONCLUSION
For the foregoing reasons, Plaintiff's motion for attorney's fees (Dkt. 31) is granted in part and denied in part. Plaintiff is awarded $49,193.20 in reasonable attorney's fees, costs, and expenses.
SO ORDERED.

The Court assumes familiarity with the underlying facts of this litigation, which are described in more detail in the Court's January 18, 2017, Decision and Order. (Dkt. 29).

"The doctrine of in pari delicto , a term meaning 'of equal fault,' reflects the principle that a plaintiff who has participated in wrongdoing equally with another person may not recover from that other person damages resulting from the wrongdoing." Republic of Iraq v. ABB AG , 768 F.3d 145, 160 (2d Cir. 2014).

The Court performed its calculations using the formula accepted by the case law-Plaintiffs suggested formula. However, the Court determined that $195.68 is the appropriate hourly rate for 2016, when rounded to the nearest hundredth. Nevertheless, because Plaintiff has requested that the hourly rate for the work performed in 2016 be $195.67, the Court will use that value instead.

The Government describes Antonetti as "precedential." (Dkt. 40 at 5). While it is unclear exactly what connotation the Government ascribes to this term, the Court notes that the decisions of other district courts, including decisions from the same district, are "relevant and persuasive." Baldanzi v. WFC Holdings Corp. , No. 07 Civ. 9551(LTS)(GWG), 2008 WL 4924987, at *3 (S.D.N.Y. Nov. 14, 2008). However, "the decisions of district courts, even those located within the same district, are not binding on other district courts." Arculeo v. On-Site Sales & Mktg., LLC , 321 F.Supp.2d 604, 609 (S.D.N.Y. 2004), aff'd , 425 F.3d 193 (2d Cir. 2005).